UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

HASSAN MOHAMED,

      Plaintiff,

  v.                9:14-CV-1389
                     (TJM/TWD)

M. POWERS, et al.,

      Defendants.

---

APPEARANCES:

HASSAN MOHAMED
09-A-0677
Plaintiff, pro se
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508

THOMAS J. McAVOY
Senior United States District Judge

**DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Hassan Mohamed commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP application"). Dkt. No. 1 ("Compl."), Dkt. No. 5 ("IFP Application"). By Decision and Order filed on January 21, 2015, the Court granted plaintiff's IFP application, but found that plaintiff's claims were barred by the three-year statute of limitations applicable to claims under § 1983, and therefore subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A. Dkt. No. 7 (the "January Order"). In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint

with facts demonstrating why his claims are timely, or if untimely, why the Court should toll the applicable limitations period. *Id.* at 9. On February 23, 2015, plaintiff filed an amended complaint. Dkt. No. 8. In a Decision and Order filed on April 6, 2015, the Court dismissed plaintiff's action as time-barred, Dkt. No. 9 (the "April Order"), and Judgment was entered. Dkt. No. 10. Plaintiff appealed the Judgment and on September 22, 2015, the Second Circuit vacated the dismissal and remanded the matter to the Court for "factual findings on the length of the administrative exhaustion period, its effect on the applicable statute of limitations, and such further action as may be appropriate." Dkt. No. 16. On September 23, 2015, the Court issued an Order directing plaintiff to file a second amended complaint with, "facts sufficient for the Court to determine the period during which the statute of limitations on plaintiff's claims was tolled as he exhausted his administrative remedies." Dkt. No. 17. Currently before the Court is plaintiff's second amended complaint. Dkt. No. 18.

## II.     Legal Standard

The legal standard governing the dismissal of a complaint for untimeliness pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A was discussed at length in the January Order and will not be restated here. *See* January Order at 8-10.

## III.    Review of the Second Amended Complaint[1]

Taking into account plaintiff's pro se status, the Court construes the allegations in plaintiff's second amended complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less

---

[1] Plaintiff annexed exhibits to the second amended complaint including, *inter alia*, an Inmate Misbehavior Report, Hearing Disposition and copies of plaintiff's appeals of the decision rendered at a Tier III hearing. *See* Dkt. No. 18-1. To the extent that these documents are relevant to the incidents described in the second amended complaint, the Court will consider the exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference)

2

stringent standards than formal pleadings drafted by lawyers."). On August 5, 2011, plaintiff received a misbehavior report, prepared by defendant Sergeant M. Powers ("Powers"). *See* Sec. Am. Compl. at 3. The report listed the incident date as August 4, 2011 and the location was described as "facility compound." *See id.* In the report, Powers described the incident as follows:

> . . . on 08/03/11, you inmate Mohamed Hassan, persuaded several members of the Muslim Community to refuse participation in the Ramadan evening services of 08/03/11. Your actions put's [sic] you in violation of rule 104.12 that states "you shall not lead, organize or urge others to participate in any action which may be detrimental to the order of the facility."

Dkt. No. 18-1 at 2.

As a result of the misbehavior report, a Tier III Superintendent Hearing commenced on August 10, 2011 with defendant, D. Phelix ("Phelix") presiding. *See* Sec. Am. Compl. at 3. Plaintiff objected to the misbehavior report and argued that it was vague and incorrect and thus, failed to provide proper notice. *See id.* at 4. On August 17, 2011, plaintiff was found guilty of violating the DOCCS rule related to demonstrations. *See id.* at 8. Plaintiff was sentenced to six months in the Special Housing Unit ("SHU"), loss of recreation, commissary, packages and phone privileges. Phelix also recommended a six month loss of good time. *See id.*; Dkt. No. 18-1 at 8. Plaintiff was confined to the SHU for 115 days and deprived of commissary, recreation, library, phone privileges and the right to worship. *See* Sec. Am. Compl. at 10. During his SHU confinement, plaintiff was confined to his cell for twenty-three hours each day and received smaller portions of food. *See id.*

On September 6, 2011, plaintiff filed an appeal of his Tier III disposition. *See* Sec. Am. Compl. at 10*;* Dkt. No. 18-1 at 9. On September 29, 2011, plaintiff wrote to the Director

3

of Special Housing for the status of his appeal. *See* Dkt. No. 18-1 at 18. On October 5, 2011, plaintiff received a letter from Albert Prack ("Prack") advising that an appeal was not received. *See id.* at 20. Therefore, the September 29, 2011 letter was accepted as an appeal and plaintiff was afforded the opportunity to submit supplementary material. *See id.* On October 25, 2011, plaintiff re-submitted his appeal. *See id.* at 22. On November 15, 2011, the decision rendered at the August 2011 hearing was reviewed and reversed. *See* Dkt. No. 18-1 at 30.

Construed liberally, the second amended complaint contains the following claims: (1) Powers prepared a "false business record;" (2) defendants violated plaintiff's due process rights under the Fourteenth Amendment; (3) defendants denied plaintiff equal protection; and (4) the conditions of confinement violated plaintiff's Eighth Amendment rights. *See* Sec. Am. Compl. at 11. With respect to the timeliness issue, plaintiff, "has an aggregate of 90 days tolled, his exhaustion period extended from August 17, 2011 until November 15, 2011, which is the date of his administrative appeal". *See* Sec. Am. Compl. at 9.

## V. ANALYSIS

### A. Statute of Limitations

In the January Order, the Court discussed the statute of limitations for claims brought pursuant to § 1983:

> In Section 1983 actions, the applicable statute of limitations is the State's "general or residual [state] statute [of limitations] for personal injury actions[.]" *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, a three-year statute of limitations applies for personal injury actions and thus to Section 1983 actions. *Id.*; *see also* N.Y. C.P.L.R. § 214(5). Although state law provides the relevant limitations period, federal law determines when a Section 1983 action accrues, which has been held to be the time "when the plaintiff knows or has

4

> reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quotation omitted); *see also Covington v. City of New York*, No. 94 Civ. 4234, 916 F. Supp. 282, 285 (S.D.N.Y. Feb. 9, 1996) (quotation omitted) (same). "Thus, in determining when the statute begins to run, the proper focus is on the time of the [wrongful] act, not the point at which the consequences of the act become painful." *Covington*, 916 F. Supp. at 285 (quotation omitted).

Dkt. No. 7 at 8.

Here, plaintiff's due process claims arise from a disciplinary hearing that concluded on August 17, 2011. After the hearing, Phelix sentenced plaintiff to SHU confinement and recommended a six month loss of good time. *See* Dkt. No. 18-1 at 8. "The Second Circuit has held that if the length of a plaintiff's confinement is affected by the result of a disciplinary hearing, the plaintiff's cause of action does not accrue until the guilty determination is reversed." *McEachin v. Drefus,* No. 06-CV-1489 (GLS/GJD), 2008 WL 686812, at *2 (N.D.N.Y. March 10, 2008) (*citing Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996)). Based upon the facts asserted in the second amended complaint and exhibits annexed thereto, the accrual date for plaintiff's procedural due process claims related to his disciplinary hearing occurred on November 15, 2011, the date when the disciplinary determination was reversed. *See* Dkt. No. 18-1 at 30; *see McEachin*, 2008 WL 686812, at *2 (finding that because plaintiff suffered a recommended loss of good time, his cause of action accrued when the disciplinary determination was reversed on appeal). The statute of limitations expired on November 15, 2014 and thus, plaintiff's claims are not time-barred. *See* Dkt. No. 7 at 8.

### B. False Misbehavior Report

In the January Order, the Court dismissed plaintiff's claims based upon the filing of a false misbehavior report holding:

> It is well settled that "a prison inmate has no general

5

> constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988)); *accord, Pittman v. Forte*, No. 9:01-CV-0100 (LEK/GLS), 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002); *see also Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief."). "The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted).

Dkt. No. 7 at 12.

The Court has reviewed the second amended complaint and finds that plaintiff's claims related to the filing of a false misbehavior report suffer from the same infirmities as the original pleading. For the reasons set forth in the January Order, these claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### C. Fourteenth Amendment

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996). "Prison discipline implicates a liberty interest when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)); *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.

### 1. Liberty Interest

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (finding that while not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*).

Specifically, while under certain circumstances confinement in the SHU of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions,[2] for a period of up to 101 days will generally not constitute an

---

[2] Under the "normal conditions of SHU confinement in New York," the prisoner is: placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited. *Palmer v. Richards*, 364 F.3d 60, 65 n. 3 (2d Cir. 2004) (citation omitted).

7

atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231. It is the length of the actual punishment that is relevant in determining whether a period of SHU confinement implicates a cognizable liberty interest, and, not the length of the sentence imposed. *Scott v. Albury*, 156 F.3d 283, 287–88 (2d Cir. 1998) ("No right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin [v. Conner]* to require that we look to actual punishment in making this determination.").

In order to state a viable cause of action for a violation of due process arising from the hearing, plaintiff must first plead facts to establish that he had a liberty interest in being free from confinement in the SHU. As a result of the disciplinary hearing, plaintiff was sentenced to six months in the SHU. *See* Sec. Am. Compl. at 8. In total, plaintiff was confined to the SHU for 115 days and that he suffered "atypical and substantial hardships." *See id.* at 10. At this juncture, plaintiff has sufficiently plead a liberty interest subject to due process protection.

### 2. Procedural Due Process

In the context of a prison disciplinary hearing, inmates possess due process rights under the Fourteenth Amendment, but "the full panoply of rights" due a defendant in a criminal proceeding does not apply. *Applewhite v. Sheahan*, No. 08-CV-6045, 2013 WL 144957, at *10 (W.D.N.Y. Jan. 11, 2013) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). The Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied. *Wolff*, 418 U.S. at 539. Specifically, with respect to a disciplinary hearing, the Fourteenth Amendment requires

8

that (1) the inmate receive at least twenty-four hours written notice of the disciplinary charges against him; (2) the inmate be permitted to call witnesses and present evidence "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals;" (3) the inmate be judged by a fair and impartial hearing officer; (4) the disciplinary conviction be supported by some evidence; and (5) the inmate be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken. *Id.* at 563-66.

Construing the complaint liberally, plaintiff claims that during the course of his Tier III disciplinary hearing Phelix, the hearing officer, failed to provide plaintiff with documents necessary to present a defense, including a copy of the sign-out sheet for the B-2 Dorm for August 3, 2011. *See* Dkt. No. 18-1 at 4. Plaintiff also objected to the misbehavior report because it failed to provide plaintiff with notice as required by 7 NYCRR § 251-3.1(c)(1)(2)(3).[3] *See id.* at 5; *see* Sec. Am. Compl. at 4, 6. Plaintiff also claims that Phelix improperly conducted "off the record" interviews of witnesses. *See* Dkt. No. 18-1 at 10.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Fourteenth Amendment due process claim against Phelix survives sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

---

[3] 7 N.Y.C.R.R. § 251-3.1 is entitled "Misbehavior Report." The relevant sections provide:

(c) The misbehavior report shall include the following:
    (1) a written specification of the particulars of the alleged incident of misbehavior involved;
    (2) a reference to the inmate rule book number allegedly violated by the inmate, and a brief description of the rule;
    (3) the date, time and place of the incident

7 N.Y.C.R.R. § 251-3.1

9

The Court reaches a different conclusion with respect to plaintiff's Fourteenth Amendment due process claim against Powers. Plaintiff does not have a constitutional protection against false testimony by a corrections officer at a hearing. *See Davis v. N.Y.*, No. 99-CV-0307, 1999 WL 1390247, at *2 (W.D.N.Y. Dec. 14, 1999) (holding that the alleged constitutional violations are based upon the conduct of the hearing not on the truth or falsity of any misbehavior report or testimony). Plaintiff's allegations against Powers do not implicate the due process in the proceeding itself and thus, are dismissed for failure to state a claim.

### D. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Chaney v. Koupash*, No. 04-CV-0126 (LEK/DRH), 2008 WL 5423419, at *20 (N.D.N.Y. Dec. 30, 2008) (citing *Myers v. Barrett*, No. 95-CV-1534 (RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997)). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir.2005).

Plaintiff fails to allege any facts to suggest how he was treated any differently than similarly situated inmates. Vague and conclusory allegations, are insufficient to plausibly

suggest an equal protection violation. *See De Jesus v. Sears Roebuck & Co.*, Inc., 87 F.3d 65, 70 (2d Cir.1996); *see Byng v. Delta Recovery Servs., LLC*., No. 13-0733 (MAD/ATB), 2013 WL 3897485, at *15, n. 5 (N.D.N.Y. July 29, 2013) (finding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to any one or that someone else was treated differently than he was). Accordingly, plaintiff's Fourteenth Amendment Equal Protection claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. Eighth Amendment - Conditions of Confinement

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id.* (citation omitted). Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, *inter alia, Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[The inmate must show that the conditions, either alone or in

11

combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125.

In this case, plaintiff's alleged deprivations fall far short of satisfying the objective element of the Eighth Amendment. *See McNatt v. Unit Manager Parker*, No. 99-CV-1397, 2000 WL 307000, at *4 (D.Conn. January 18, 2000) (holding that the totality of conditions in restrictive housing unit, including stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning supplies for six days; no toilet paper for one day; no toiletries or clothing for six days; no shower shoes; dirty showers; cold water that did not function properly; and smaller food portions, while not pleasant, did not rise to level of Eighth Amendment violation)); *see also Thomas v. Smith*, 559 F.Supp. 223, 224 (W.D.N.Y. 1983) (dismissing the complaint alleging unconstitutional denial of basic hygiene items such as deodorant, soap, shampoo while confined in Attica's SHU).

Moreover, even assuming plaintiff's allegations are sufficient to satisfy the objective prong of the Eighth Amendment analysis, the complaint lacks facts establishing which correctional officers were responsible or personally involved in the alleged unconstitutional conditions. It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008

12

WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). Plaintiff has not sufficiently alleged that any defendant acted with a deliberate state of mind. *See Gaston v. Coughlin*, 249 F.3d 156, 157 (2d Cir. 2001). Consequently, plaintiff's Eighth Amendment claims related to his conditions of confinement are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim. *See Gomez v. Sepiol*, 2014 WL 1575872, at *9 (W.D.N.Y. April 11, 2014); *see also Toliver v. Dep't of Corrs.*, No. 10 Civ. 6298, 2012 WL 4510635, at *9 (S.D.N.Y. Apr. 10, 2012) (dismissing the deliberate indifference claim for failure to plead facts identifying a responsible official who acted with a sufficiently culpable state of mind).

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the claims that Powers filed a false misbehavior report and provided false testimony are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; (1) equal protection claims; (2) Fourteenth Amendment claims against Powers; and (3) Eighth Amendment claims based upon plaintiff's conditions of confinement; and it is further

**ORDERED**, that Powers is **DISMISSED** as a defendant herein; and it is further

**ORDERED**, that the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon remaining defendant. The Clerk shall forward a copy of the summonses and amended complaint to the Office of

13

the New York Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the complaint be filed by defendant, or his counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so may result in the dismissal of this action; and it is further;

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: December 10, 2015

Thomas J. McAvoy
Senior, U.S. District Judge